Good morning. May it please the Court. Gail Ivins, appearing on behalf of petitioner-appellant Angel Rivera. The premise of the government's responding brief seems to be that the petitioner's allegations can be disregarded entirely, that they count for nothing, and that therefore there's no there there in terms of his allegations regarding the proceedings, his request for assistance with obtaining witnesses, and his statement that under penalty of perjury he's told the district court that he made. Well, I'm not sure that's quite where this case is going. I mean, the standard, and correct me if I'm wrong, is some evidence. That's the standard solely for whether there's sufficient evidence. So Hill is the some evidence standard. So was the evidence, if we accept the evidence without any analysis of procedural due process, then the standard is some evidence. But he also challenges the procedure, and for that the standard is not some evidence. So there is that distinction. And I even have a case that says that, which I will find at one second. Don't have to. Don't spend your time on that. And so the one thing, the Fourth Circuit case that the parties both discussed in their briefs, the thing that is different here, arguably, is that there is a declaration from the disciplinary hearing officer, Mr. Cortez. And the government points out that because Mr. Rivera didn't make these very specific allegations about, you know, not having his witnesses, et cetera, in his very first appeal, that somehow that means nothing he said in his petition or in his second appeal should be considered. But it appears from the record that his very first appeal was actually filed without him having the benefit of having reviewed the disciplinary hearing officer's actual report. If you look at the dates, he submitted that appeal before he received a copy of the disciplinary hearing officer's actual written report. And if that's true, all he had was what was said on the record. And if that's the case, we don't have a transcript. What we have is the post hoc his appeal statement that he didn't ask for witnesses. And so until he saw that that's what the disciplinary hearing officer said, he didn't really have a reason to say, hey, but I did ask for witnesses. And so his signature on these documents, what do you make of that? So he put in his materials that he filed with the district court and with the second appeal that he was in the secured housing unit, the SHU, at the time that those two different, the July 18th and August 2nd forms were provided to him and that it was the UDC officer, Ms. Bilbrey, who filled them out entirely. And then he was just, you know, he's in handcuffs and given them to sign. So that's what he says. He doesn't say, I didn't read them, but that is certainly the truth. I was in the SHU. I was in handcuffs. Right. But we're faced with a situation where that's kind of, well, you have the presumption of a signature, of course, which I know you're familiar with. Then you have a declaration and other documentary evidence. So we, on his due process claim, what do you think is the strongest argument he makes on that point? You mean the procedural due process, not substantively? Yes. I mean, he very clearly in his second appeal lays out, you know, a contrary narrative to what the record shows. And the contrary narrative is, you know, Officer Griffin came in, we're all sitting around, and he says, someone's going to have to take a shot for this broken smoke detector. And then he takes me and the other guy in the SHU, and then I get hit with it. And he does a lot of filing of stuff and asking for things. I mean, that's his narrative is to the contrary of the record narrative. And so to go back where I started. So what is the standard on reviewing that? So that is an excellent question. And I wish I had the case to tell you exactly the right answer. But we have a petition with his allegations signed under penalty of perjury where he alleges his narrative, which is contrary to the written record. And so we get back to the question of do those allegations matter in terms of making a determination? And in the normal course a complaint, we treat that as the allegations are treated as true unless they're proven not true. And so is it enough for the government to just point to a preexisting record, right? The record that they are pointing to exists prior to his allegations. And the one thing that they, you know, add would be the declaration of the hearing officer where there's a sentence that says, you know, he didn't ask for witnesses. Well, of course, under your construct, there would never be any end to this because here's the documentary evidence. Here's the file from the institution. And then here's a sort of after the fact. And I'm not saying he made it up, but here's an after the fact complaint, if you will, with facts that completely are contradicted by the record. So the district court here said there was sufficient evidence on the procedural due process claim. Where did he err? Well, what the district court basically said was the district court as well as the government, they are not giving weight to his allegations. And I think the question is when a petition is filed and signed under penalty of perjury by the petitioner, do they have to give it some weight? And if they give it some weight, the Fourth Circuit case that we discuss would say you have to have a hearing. I mean, if we're going to discount his allegations and credit the government's position, factual findings like that have to be done after a hearing, which if I'm right about that, takes us to the mootness point. Do you want to say why isn't this case moot, by the way? So this court, the Ninth Circuit, not the Second Circuit, this court has dealt with that issue and said that when there's a chance that a finding could affect, you know, the case and there's a live controversy between the parties, then we have a non-moot situation. How would this case affect his term of supervised release? Well, just as in the Supreme Court's decision in Johnson, the early one in 2000, not one of the more recent ones, said that that is a factor. The over-service of time is a factor that can be considered in deciding on supervised release. This court both... He's on supervised release? He is not on supervised release until November 25th. November 25th. That's why you asked to expedite. He's still in BOP custody today, although he's at a halfway house in BOP custody. In Kittle v. Thomas, 620 Fed Third 949, this court distinguished the cases that talk about if it can affect supervised release by saying there is no controversy for us to determine, therefore it is moot. I think that was Your Honor's opinion. And in this case, there is a controversy to determine. So under Kittle, we're not moot. So if the court were to rule in your client's favor, he would then be filing a motion for modification? He would need to serve a year of supervised release from his release date, which would be November 25th. But in that motion, he could say the Court of Appeals reversed this and we had a hearing and it was wrong and I should have gotten my 41 days and indeed I should have been allowed to finish my RDAP program. I mean, he was ready for RDAP. Finish his what program? I'm sorry. The RDAP, the residential drug. How could he... But how can he get any relief? The district court would give it to him. But how can he get relief? That's an in-prison program, correct? Right. But he would be able to point out to the district court, you know, I did everything for RDAP and the only reason I wasn't allowed to do the, you know, the community part was because of this. And so he programmed incredibly well until this happened. So his basic argument is that the change in these days and the discipline would be in favor of, of what, reducing his term for supervised release or what? It gives him an argument that he over-served custody time and that he, yes, should be able to have a... Would be a reduction. ...have a reduction or a termination of supervised release. So it's not a, it's not moot because it's a live controversy between the parties. Thank you. And I see my time is up. Thank you. Thank you. May it please the court. Eliezer Benchmuel on behalf of Warden Martinez. The district court in this case did exactly what the Supreme Court and this court have repeatedly admonished district courts to do. It reviewed the record evidence. It reviewed the evidence submitted by the parties. And it determined that Mr. Rivera's due process rights had been afforded to him as a matter of fact. It then went on to determine that there was evidence in the record that supported the DHO's determination that he had been in possession of a cell phone and therefore was appropriately sanctioned. The court did what it was supposed to do. It looked at the evidence. Far... Now, I understand that the appellant at this point is saying that the district court just simply disregarded his declaration, but that's not what happened in this situation. The district court expressly acknowledged that contention, acknowledged the fact that he was saying that, that in his declaration. However, the court also went on to review the record evidence, both the declaration provided by the disciplinary hearing officer and the records that were created contemporaneously at the time of these events. And it determined as a matter of fact that he had been afforded repeatedly the opportunity to identify and call witnesses on his behalf. And the fact that he had repeatedly declined to do so. The records are that he was presented with, at the very least if you look at the two separate forms that were presented to him that he signed. These were presented to him over two weeks apart. They listed the opportunity to provide both the names of witnesses and the facts that they could have presented to the DHO. I think counsel's argument, as I understand it, is that he also has this countervailing complaint or recitation of facts which contradict the record that you just recited. And that you can't ignore that. And as a result, he at least gets a hearing to sort that out. Well there's two things about that, your honor. The first one is that that's not ordinarily what happens within habeas corpus proceedings. And if you look at just the rules that apply to 2254 petitions, which of course are not directly applicable to this particular 2241 petition, but can be applied in appropriate cases. Under rule 7 of those rules, the court is expressly empowered to invite the parties to submit records and evidence so that it can determine whether or not a hearing is necessary. Under these particular circumstances, given the fact that in essence, all of the allegations with respect to the denial of due process came long after the fact. These are things that he had an opportunity to present to the DHO, to the BOP, to complain about the fact that he had witnesses he wanted to bring. He didn't do any of these things. And so that entire factual narrative that the petitioner alleged should have been presented to the DHO, he was silent on when he had every opportunity to present it. There is no contemplation that an inmate can simply remain silent, say absolutely nothing, and then after the fact, after all the due process has been afforded, after all of the determinations have been made, that they can go back and complain about the fact, well, I didn't get this paper, I wanted all these witnesses, all of these facts should have been presented to the DHO. Because all of a sudden, as the court pointed out, you will be having evidentiary hearings in every single habeas petition in which all the inmate has presented is a denial of the underlying facts presented in the factual record. And again, this is a situation that happens every day in prisons everywhere across the United States. This is something that a record, that's why a record is created and presented. This is why a declaration was provided by the custodian who actually reviewed these records to explain the basis for that DHO's determination. And so when faced with all of these facts and all of these documents, including documents with Mr. Rivera's signature on them, the district court drew the appropriate factual conclusion that he was afforded the opportunity to call witnesses, that he just simply declined to exercise that right. And there's no basis for finding that the district court was clearly erred in making that factual determination that the, that he had been provided with that opportunity to present. The only other issue really in this case is whether or not the facts presented to DHO were sufficient to make a finding. And despite the, Mr. Rivera's objections, the reality here is what you have is an officer who comes across an inmate standing, you know, watch over a mop closet, he opens up that mop closet, he sees Mr. Rivera standing on a mop bucket reaching for the ceiling, he immediately reaches down, closes the door. Later on it's found after the, after the two inmates are removed from the area, it's found that there is a tampered with alarm as well as a cell phone hidden in the ceiling. Is there anything a little unusual in this situation? How many reports had to be submitted before there was the report? There were four written incident reports in this particular situation. I know. I mean, I should have not said how many. The number of reports that were submitted before. I agree, Your Honor. Is that unusual? I don't know how unusual it is, but I would point out two things. The first one is that every last one of these incident reports were provided to the, to Mr. Rivera so that to the extent that he wished to challenge anything in them, including any inconsistencies that he saw within that incident report, he had every opportunity to do so. This is not some sort of cover up or anything else. He was presented with these records. More importantly, each of these, these rewrites was the function of the agency itself sending it back for a revision because an official somewhere up the chain said there is not enough information here to be able to sustain a charge against this particular individual. This is the same thing that happens in, in, obviously in a, this is not a criminal case quite obviously, but even in a criminal case, the fact that you have a superseding indictment that adds new facts does not automatically require dismissal of all the charges. This is a situation where yes, there were errors made, but those errors were caught by the agency. Mr. Rivera was not subjected to a requirement that he root out these errors, that he somehow, you know, on his own find, you know, what the problem here is. He was provided with the evidence. He was provided with the tools necessary to challenge the narrative. He simply declined to do so. And that is why the, the DHO's determination based on both the final incident report and of course on the, the memorandum that was specifically cited by both the DHO and by the district court when upholding this decision, all of these facts were, were in the, were consistent. It was Mr. Rivera in that closet, it was Mr. Rivera reaching up for that cell phone, and it was Mr. Rivera who was found guilty of possession of the cell phone. Unless the court has anything more for me? That was it. Thank you. Thank you, Your Honor. May I have one minute, Your Honor? Sure, sure. So I don't see reaching up for the cell phone anywhere in the record. I see him on the mop bucket standing down or on the mop bucket, so I don't know where in the record that came from. His first appeal, which is filed, dated 8-25-2017 at ER 175, he indicates at 181 that he hadn't been given a copy of the DHO findings. I mean, so in terms of him not saying in that one anything other than I didn't have the phone, etc., you know, he didn't say I wasn't allowed to call witnesses, he hadn't seen that yet. And his other appeal does include all of that, and that's the one that he filed in March of 2018. And so this isn't something brand new with the petition. He did include that information in the other appeal. Thank you. Thank you. Thank you both for the argument this morning. The case just argued of Rivera v. Langford is submitted.
judges: Parker, Farris, McKeown